THE BOARD OF COMMISSIONERS OF WYANDOTTE CO. V. THE FIRST PRESBYTERIAN CHURCH OF WYANDOTTE.

1. DEDICATION OF LOTS, *Good for Pious Purposes.* The Wyandotte city company laid out the city of Wyandotte. On the plat made and filed appear three lots marked "church lots." In the dedication written out on the plat, and duly acknowledged, these lots were said to be "dedicated to church purposes." On the records of the company appears a resolution that these lots "be and the same are hereby appropriated as church lots." *Held,* That whether this was a statutory dedication or not, it was good as an appropriation for pious purposes, which would be enforced at the instance of any church proving its right to be regarded as the personal beneficiary.

2. INTENDED RECIPIENT, *Parol Testimony Competent to Prove.* Two of these lots were conveyed to separate church organizations. No conveyance was made of the third, but the plaintiff claims that it was appropriated to it, and for its benefit. *Held,* That parol testimony of the acts and declarations of the managing officers of the city company is competent to prove that plaintiff was the intended beneficiary.

3. CHURCH, *Not Estopped from Present Claim to Lot.* There was at the time of the transactions named in the first paragraph of this syllabus, one and only one Presbyterian church in the city of Wyandotte. It had an organization, employed a pastor, and held services, but was not incorporated. It was a weak organization, of few members, and of small financial ability. From sometime during the war until 1881, it had no settled pastor, and only occasional preaching. Yet there was no formal giving-up of the organization, and in 1881 it became incorporated, and has since had a settled pastor. *Held,* That neither the feebleness of the organization, its failure to keep up continuous services, nor its lack of

earlier incorporation, would estop it from a present claim to the benefits of the appropriation.

4. PRESBYTERIAN CHURCH; *Lot Unconditionally Appropriated.* All the tracts dedicated as church lots, except the one in controversy, were conveyed to other churches. On the records of the company, and at a date subsequent to those of the resolutions granting the other lots, is a resolution that "a church lot be appropriated to the Presbyterian church." This resolution appears by the records to have been made on the application of Mr. Goodrich, a member of that church. Subsequent application by parties representing other churches for this lot, were refused on the ground, as stated by the officers of the company, that it had been reserved and apppropriated to the Presbyterian church. A paper soliciting subscriptions for the building of a church was circulated by the pastor of this church, and subscriptions taken. This lot was spoken of as the site of the building, and plans discussed with reference to the peculiar slope of the ground. No conditions appear on the record in the above resolution granting a church lot to the Presbyterian church. The tract was never listed for taxation. *Held,* That a finding of the trial court that this lot was unconditionally appropriated and reserved to the Presbyterian church must be sustained.

### *Error from Wyandotte District Court.*

ACTION brought by the *First Presbyterian Church of Wyandotte* against the *Board of Commissioners of Wyandotte County* and others, to obtain the title to and the sole possession and control of a certain lot situate in the northeast corner of Huron place, in the city of Wyandotte, and designated on the plat thereof as a "church lot." The petition alleged among other averments, in substance, that the lot in controversy was by the Wyandotte city company set apart and dedicated for church purposes, and for no other purpose; that this company was the owner of said land; that the plaintiff aforesaid was the intended beneficiary for and to whom said church lot was so set apart and dedicated; that the title thereto, by virtue of said dedication, vested in the county of Wyandotte in trust for the use and benefit of the plaintiff for church purposes; that this dedication was unrevoked and irrevocable; that Wyandotte county ever since such dedication has held the fee-simple title to said church lot in trust for plaintiff; that the defendants, the board of county commissioners, and Hiram Malott, James F. Johnston, and J. W.

Wahlenmaier, as such commissioners, claimed title and possession of said lot by conveyance of September 8, 1868, from John McAlpine, formerly trustee of the Wyandotte town company; that the board of county commissioners had threatened, commenced, and were about to build a court house on said lot, in breach of the trust created for the benefit of plaintiff. Plaintiff prayed for an order enjoining the commissioners and their co-defendants from diverting said lot from the purpose for which the dedication was intended and made, and from erecting a court house thereon; that the deed of McAlpine to the board of county commissioners of date September 8, 1868, be declared to be null and void as against the rights of the plaintiff, and that the board of county commissioners—the county of Wyandotte—holds the title to said premises in trust for the use, benefit and enjoyment of the plaintiff, for church purposes; that it be decreed that plaintiff have the possession, use and enjoyment of said premises for church purposes, and that the injunction be made perpetual; and for other relief.

A temporary injunction was granted by the district judge, at the beginning of the action. March 9, 1882, the motion of the defendants to dissolve the temporary injunction was argued at chambers, and overruled. March 18, 1882, the defendant board of commissioners filed its answer, admitting the allegations contained in the petition in the following particulars: The organization of the Wyandotte city company for the purposes mentioned in the petition (except the laying-off and dedicating of any grounds for the use of charitable, benevolent, religious, and church purposes, which was denied); admitted the making of articles of association; their record, the appointment of McAlpine, by letter of attorney, its trustee as alleged in the petition; that the town company, in pursuance of its organization, did locate a town site, and cause the same to be surveyed and platted, and then caused "the plat thereof to be executed and acknowledged and recorded, as in the petition set forth;" that upon said map or plat was marked and designated a certain public park or

square, as described in said petition, and that in the corners of said public park or square were certain lots, marked and designated as charged in said petition, and that said Wyandotte company was the owner of said land;" . . . "that Huron place, as shown by said plat, was, by said Wyandotte company duly dedicated to the public, except the lots and parcels of ground on the four corners thereof," but denying that the lot on the northeast corner of Huron place was ever dedicated to church purposes, or that it was dedicated to or intended for the plaintiff. The defendant answering, claimed and asserted that it has title in fee simple to the lot in controversy, under and by virtue of a deed of September 8, 1868, from John McAlpine, and admitted that it was in possession of said premises, and that it was its intention to build a court house thereon, and was about to do so. In reply, plaintiff denied each and every allegation and averment contained in the answer not averred or admitted to be true in the petition; and prayed for relief additional to that demanded in the petition.

Trial at the April Term, 1882, when a jury was waived, and the cause tried by the court. Findings and judgment for the plaintiff. *The Board* alleges various errors, and brings the case to this court. Other facts are stated in the opinion.

*Hiram Stevens, John B. Scroggs,* and *James S. Gibson,* for plaintiff in error:

1. There cannot be any "dedication" under our statute or at common law, for *any church.* If there was a dedication under the statute, it must have been under § 1, or § 6, or § 11, of ch. 24; Comp. Laws 1862. From the necessity of the case a town or city could not be available as such without avenues, streets, lanes, commons, and possibly some other public uses. But is a *church* an *"other* public use?" The use of the word "other" indicates that such "public use" is of the same character as to its public nature as those that are specifically named. Who can say that under the constitution, the laws

of the state, or the policy of either, a church is a public institution to which the *entire public* alike have free and equal access? The constitution, the laws of the state and the policy of both alike forbid such a conclusion and perversion of legal terms. By the fundamental law of both the nation and the state, no man's religion can be abridged, nor can his right of worship be restricted or interfered with by law. Nor can he "be compelled to attend or support any form of worship." (U. S. Const., art. I of Amendments; Kas. Const., § 7 of Bill of Rights.)

If a church is a "public use" then the public, as such, can be taxed for its support; and the public alike may all have a right to enter its portals. The state and the church are completely and, let us trust, forever divorced.

The constitution of this state provides that the title to all church property shall vest in the trustees, "whose election shall be by the members of such corporation." (Kas. Const., art. 12, § 3.) This absolutely precludes all idea that a church or its edifice can be a "public use." Those who control the use of this "*corporate*" property, viz., the trustees, have the absolute dominion over the ownership, control, use and disposing power of the same. It would be unjust to deny them the right to use the fruits of their own means and labor. They may forbid all but their own communicants from the use of such ground or edifice. Then why call it public? The constitution calls churches (what they are in nature) "corporations"—surely not public, or municipal, but *private* "corporations."

Hence we say that a church lot or house is not a public use. Clearly such was not in the minds of those who drafted the section in question; and by the use of the phrases "for public purposes" and "other public uses," the legislature evidently intended such other public easements the use of which is open alike to all who conduct themselves and measure their conduct according to police regulations. Besides, the maxim, *Expressio unius, exclusio alterius,* may be invoked as giving

sanction to this view. The legislature has named the easements, and has thereby excluded all others not of a *public* character.

The common law sanctions no dedication to anything that is not for a public use. (Bouvier's Law Dict., *Dedication*, and authorities there cited; 14 Kas. 312.)

But it may be said, as it was in the court below, that a church lot or building may be, and is, for a "public use," and that authorities sustaining that view can be found. While it is true that a portion of the public attend church worship, that fact certainly does not make the place of such worship a public place, any more than would the fact of the attendance of a portion of the people upon saloons make such places of resort also public. So may not the attendance of a portion (or even all) of the people upon other public resorts, places of public amusement, or channels and arteries of commerce, be claimed with greater force and reason to be public? But such is not the criterion that makes such places of resort appropriated or rather "dedicated" for public uses. It is the absolute, unrestricted and equal right of all alike to go to a public place for amusement or entertainment, unrestrained except by police regulations, that constitutes such place public; and then only when such places may be kept up by public contribution.

But it may be said that this court is bound by the decision in the case of *Hannibal v. Draper*, 15 Mo. 634, as our state adopted the statute of Missouri, with the construction given it by the supreme court of that state. We say, no; for the reason that our organic law forbids the conclusion that a county can hold the fee in land dedicated for a church use (as it must under the opposite view), but such fee must be in the trustees of the church corporation. (Kas. Const., art. 12, § 3.)

2. The town company, in platting the ground in suit, intended only that such ground should be appropriated for church lots to such church as might upon application agree with the proprietor to either purchase or take as a gift, the

40—30 KAS.

same, and erect such valuable improvement thereon within such time as the proprietor and the church might agree upon.

By the terms of the statute under which the defendant in error bases its claim to the ground, the record of the plat does not sanction its unfounded claim of being an unconditional promise that it should be the absolute and unconditional owner of the northeast corner of "Huron place," or in fact of any other corner of the same. The records of the town company, made very soon after the plat was made, and long before it was acknowledged, show that while "*a* lot" was intended for the *New School* Presbyterian church, yet no particular lot was selected, designated, or in any way appropriated to it unconditionally. The evidence of the defendant in error alone may be a sufficient warrant for this conclusion.

3. There was no acceptance of the proffered grant by the defendant in error, before its revocation. Upon this point, we rely upon the allegations of the defendant in error, in its petition, as well as on the evidence. It is true the petition avers that it duly accepted the grant, but of the time and manner of such acceptance it pleads ignorance; but there is an entire absence of any evidence tending in any degree to prove that it even accepted this property before suit was brought.

4. Conceding that the defendant in error has a trust estate in the property in suit, or that a trust estate was intended to be created by the town company in 1857, yet we say that such estate fails, for two reasons: First, the same is void as to the defendant in error, since it had no existence for twenty-four years from the time of its creation; second, the same is void because of the uncertainty of the intended beneficiary. The evidence shows most clearly that if any trust was intended for any particular church, it was the "New School" Presbyterian church. The evidence is undisputed that there never was such a church in Wyandotte, until 1881. While there need not be a beneficiary in being at the time of the creation of the trust, yet a voluntary executory trust may be revoked

before acceptance by such beneficiary. ( 2 Story's Eq. Jur., § 972, and note 4; 32 Mich. 279; 37 id. 291; 14 Kas. 316.)

Three things are indispensable to constitute a valid trust: First, sufficient words to raise it; second, a definite subject; third, a certain ascertained object. ( 2 Story's Eq. Jur., § 964.)

This asserted estate lacks all these essentials. It lacks sufficient words in this, among other respects, that our statute prohibits the creation of express trusts except they be in writing. ( Comp. Laws 1862, ch. 109, § 1.)

If a trust estate is to arise from the act of the town company, such act lacks a definite subject. There is no particular church named. Besides, the dedication must be either of record, or parol. If by record, as is contemplated by the statute in relation to the platting of towns, then the beneficiary should be indicated in said plat. ( 2 Iowa, 27.) If a trust was created, it was a voluntary executory trust. As nothing of value passed from the defendant in error to the town company, it was a donation. A court of equity will not enforce such a trust. ( 2 Story's Eq. Jurisp., §§ 975, 975a, and note 3; 2 Perry on Trusts, § 870.)

The plat does not disclose the beneficiary. The parol testimony introduced for this purpose shows that conditions were imposed which have not been performed, and hence there is an executory trust which will not be enforced. From the parol evidence on the trial, as well as from the record evidence and the town plat, the intended beneficiary is vague and uncertain; and no particular person or body who could enforce the use of the property is pointed out. Such uncertainty is ineffective for the transfer of the estate. ( 2 Iowa, 27.)

In this case, unlike the Iowa case, there were the Methodist Episcopal church, the Methodist Episcopal church south, the African Methodist Episcopal church, the Catholic church, the Universalist church, the St. Paul's Episcopal church, and the Congregational church, each proven to have had an organization in the city of Wyandotte during the time that this lot was waiting for an owner.

A deed which does not name the grantee, is ineffective to

pass title; and if there be no grantee in being at the time of the conveyance, the same is void. (3 Washb. Real Pr., 4th ed., 263, 266.)

The petition is demurrable because there is no allegation that the plaintiff accepted the dedication before its revocation in 1868. (4 Fed. Rep. 161; 56 Mo. 166; 2 Dillon on Mun. Corp., § 636.)

5. There could be no dedication of this land by the town company for *any* purpose, because it was *not the "proprietor"* or owner at the time of the alleged dedication. The title was in the United States; therefore the land was public land, and § 11 of ch. 24, Comp. Laws of 1862, governed. The town company, not being at common law the owner, could not dedicate for any purpose. (2 Dillon on Mun. Corp., § 635, and note, and § 636.) The court below, after hearing a vast amount of evidence tending to show no title in the town company, which evidence was offered for the *avowed* purpose of showing that fact, and for no other purpose, without excluding such evidence, refused to allow the plaintiff in error to amend in this particular and conform its pleadings to the evidence, notwithstanding its authority so to do. It does seem to us that this was a gross abuse of the discretion of the court, which demands a reversal for this reason alone.

6. The court below erred in admitting parol evidence to show the intent of the town company in making what the defendant in error claims to be a statutory dedication. For if the making and filing of the plat constituted such dedication, then such plat should show the dedication, and the beneficiary. (21 Mich. 340–342; 2 Wharton's Ev., §§ 1173, 1174, and notes; 14 Kas. 273.)

7. We submit that the numerous authorities cited in the printed opinion of the court below have no bearing on the question before the court; and in this category we include *Franklin Co. v. Lathrop*, 9 Kas. 453. But *Hannibal v. Draper*, 15 Mo. 634, is an exception to this statement, as it is an anomaly in principle. (See *Xiques v. Bujac*, 7 La. An. 449.)

*Day & Troutman,* for defendant in error :

1. The dedication of the lot in controversy for church purposes was proven by the recorded plat of the city of Wyandotte, and the explanatory notes and indorsements written thereon. This was documentary and not parol testimony.

2. The assignment of error that "the court erred in admitting parol testimony for the purpose of proving a dedication by the town company to the defendant in error of the lot in controversy," does not fairly state the purpose for which parol testimony was offered by the plaintiff and received by the court. The dedication was established by documentary evidence. The beneficiary was identified by both documentary and parol testimony. The plat, with its explanatory notes, acknowledgment and record thereof, constitutes a complete statutory dedication.

Counsel for plaintiff in error say that if there was a dedication under the statute, it must have been under either § 1, § 6 or § 11 of ch. 24 of Comp. Laws of 1862. This dedication could not have been made under § 11, because at no time, since 1842 at least, has the land in controversy been public land as claimed by counsel. This law was borrowed from the statute of Missouri in 1855, where it was in force as early as 1835, and has continued in force in that state to the present time without material change. Section 8 of the statutes of Missouri (Revised Statutes 1855, ch. 158, pp. 1535, 1536, 1537) corresponds to § 6 of the statutes of this state on this subject, and provides that the map or plat shall convey the fee of all streets and alleys, and lands and lots, marked or set apart thereon for public purposes or uses, which shall vest in the county in trust for the uses and purposes for which the dedication was intended. This section has been construed by the supreme court of Missouri in the case of *City of Hannibal v. Draper,* 15 Mo. 634, old edition, (new edition, p. 406,) which is a case very similar to the case at bar. In *Reid v. Board of Education,* 73 Mo. 295, the

court held that under the statute in relation to town plats, the mere filing for record of a plat, duly acknowledged, vests in the public the fee of land intended to be dedicated to public use. See also *Bayliss v. Board of Supervisors*, 5 Dillon, 549, 556; 36 Mo. 332; 60 id. 591; 27 id. 211; 9 Cranch, 292; 18 Ohio, 22–28; 9 id. 80; 6 Pet. 431; 33 N. J. L. 13; 18 Ohio St. 226; 1 id. 496; *Comm'rs of Franklin Co. v. Lathrop*, 9 Kas. 463.

A church lot or building may be and is for a public use. A church is a public place to which the public are invited, a place from which no proper person or number of persons, on proper occasion, can be excluded, except for cause. Yet it is necessary that churches should be under the control of persons who will be at the expense of keeping them in repair, and in condition for all of the public who may desire to attend there for public worship. A public square or park is under municipal control, regulation, and restriction as to its use by the public. The one is maintained by forced contributions from the public by taxation, the other by voluntary contributions from those of the public who choose to contribute thereto.

Where the dedication is in its terms absolute, it is of course limited by the nature of the use to which it is given. Thus, land dedicated for the burial of the dead cannot be used for a highway. So a dedication of grounds for church purposes cannot be diverted from such purpose and used for a court house. Dedications to pious uses, such as glebe land, or *land for the erection of a church*, for the *use of a non-existing church*, or for the burial of the dead, are upheld. (2 Wait's Ac. and Def., p. 710; *Beatty v. Kurtz*, 2 Pet. 566, 583; *Mankato v. Willard*, 13 Minn. 18.) Property may be dedicated in writing, or by parol, to municipal, public or charitable uses, such as church squares or lots, for a burying ground, for markets, for public buildings, for school purposes, and for purposes of recreation or ornament. (2 Dillon on Mun. Corp., §§ 648, 650.) In many of the states, a dedication may be made by laying down and describing streets, public landings, squares,

and other tracts set apart for public, charitable, educational, and *religious* uses, on the plan of the town, and then recording such plan. (2 Wait's Ac. and Def., p. 713; 12 Minn. 204; 23 Ind. 527; 18 Wis. 118; 31 Mo. 393; 24 Iowa, 234; 16 La. An. 404; 3 Oreg. 126; 3 C. E. Green, 282; 15 Mo. 406; 60 id. 591; 73 id. 295.)

3. The plat was executed and acknowledged by John McAlpine, the trustee of the town company, who was duly and expressly authorized thereto by the company by a written power of attorney duly executed and acknowledged by each of the members of the company, September 28, 1859. But even if there should be found some slight irregularity in the execution and acknowledgment of the plat, it is cured by the pleadings. (14 Kas. 246, 247; 73 Mo. 295; 5 Dillon, 546, 549.)

4. Where a plat is made and recorded, the requisite intention to dedicate is generally indisputable. But the intention may also be established by parol evidence of acts or declarations which show an assent on the part of the owner of the land that the land should be used for public purposes. (2 Dillon on Mun. Corp., § 636, and cases cited; 7 Ind. 641; 9 B. Mon. 200.) The intention to dedicate the ground in controversy to *church purposes* cannot be questioned, for it is so *expressed* on the plat and in the explanatory notes. There is no evidence in the case showing that the appropriation of this lot to the Presbyterian church was made on *any condition* whatever, either then or at any time, whatever conditions may have been imposed on others; and the fact appearing in evidence that conditions of improvement were expressed in appropriations to other churches, and no such conditions were attached to this one, raises a strong presumption that no such condition was intended by the proprietors making the appropriation to the Presbyterian church. This presumption is strengthened by the evidence that at least three of the members of the town company were themselves Presbyterians. This presumption must stand until overcome by direct evi-

dence that conditions were imposed, and no such evidence exists in this case.

Parol evidence is admissible to identify the beneficiary. (9 Am. Dec. 588; 8 id. 714; 12 id. 188, 189; 60 Mo. 594; 2 Dillon on Mun. Corp., § 636, and cases cited.) The testimony of various witnesses shows repeated declarations by the members and officers of the Wyandotte town company, when in the transaction of its business, that this lot in suit was intended for the Presbyterian church of Wyandotte.

A formal vote of acceptance is not necessary. (2 Dillon on Mun. Corp., § 632.) Acts and circumstances indicating an acceptance or intention to accept on the part of the beneficiary are sufficient to constitute an acceptance, and these may be proven by parol. A complete dedication by map held not revocable, although not accepted. (33 N. J. L. 13; 30 Iowa, 94. See also 35 Cal. 489, and cases cited; 2 Dillon on Mun. Corp., § 636; 73 Mo. 304, 305.)

The church at Wyandotte was composed from its first organization of members of both of these branches of the Presbyterian church. Can it be doubted that the defendant in error is the legitimate and regular successor, and in the direct line of succession, to the first Presbyterian church organized in Wyandotte city about 1857? It was not necessary that such church should be incorporated. There being an association of persons who elect officers and proceed with the duties of the organization, constitutes a corporation *de facto*, and proves user. A subscription made to a religious corporation prior to the proper organization of such corporation, inures to the benefit of the company thereafter created, and payment may be enforced. (4 Am. Cor. Cases, 370; 66 Ill. 55; 17 id. 54; 26 id. 41; 49 id. 417; 32 id. 79.)

The defendant in error was incorporated in May, 1881. Such incorporation, or the want of incorporation, will not be permitted to defeat the evident purpose and intention of the dedication.

Under the statutes of Kansas in force when this dedication

was made, and subsequently, it was provided that a church, congregation, religious society, etc., might receive lands by purchase *or otherwise*, and might take by purchase, *grant*, or devise lots or tracts of land, etc. (Laws of Kansas, 1857, pp. 5, 6; Laws of 1858, ch. 74, §§ 1, 2.)

Such dedication of property partakes of the nature of a dedication to charitable uses; and these have frequently been upheld by courts of equity. (55 Ind. 297; 35 id. 198; 9 Am. Dec. 581; 5 Harris & J. 392. See also 7 Am. Dec. 99; 10 Barb. 23; 2 How. 127; 64 Pa. St. 169; 30 id. 437; 83 Pa. St. 206; 2 Dillon on Mun. Corp., § 437; 5 Ind. 297; 54 id. 419, 549.) Gifts to *churches*, societies, conferences, yearly meetings of Friends, families of Shakers and other organizations have been upheld. (2 Perry on Trusts, § 730.)

The exact name of the beneficiary is not essential. In some cases where a beneficiary is mentioned by a name — as in the resolution of the town company, in this case — and one is found not exactly in all points similar in name, but so alike in its objects that there can be little doubt that it was intended, it may receive the benefit of the request. And parol evidence is admissible to ascertain such beneficiary. (52 N. Y. 191; 9 Am. Dec. 587, 588; 2 Dillon on Mun. Corp., § 636.)

5. The defendant in error has shown a complete statutory dedication by map. Such dedications are held not revocable, although not accepted. (33 N. J. L. 13; 30 Iowa, 94; 2 Dillon on Mun. Corp., § 653.)

There has never been any attempt on the part of the Wyandotte city company to revoke the dedication. The town company could not revoke the dedication after September 28, 1859, the date of the acknowledgment and record of the plat. (33 N. J. L. 13; 30 Iowa, 94; 2 Dillon on Mun. Corp., § 640, and cases cited in note 2, and § 653; 49 Tex. 347; 18 Ohio St. 221; 1 id. 478; 8 Ind. 378; 9 Kas. 453; 2 Story's Eq. Jurisp., § 1520a, and cases cited.)

A dedication, when made and accepted, gives an absolute interest which the owner of the land cannot recall or revoke.

(2 Wait's Ac. and Def., p. 714, § 7; 6 Vt. 355; 10 Pet. 662; 1 Wharton [Pa.] 469; 27 Mo. 211; 18 Ohio, 18; 8 B. Mon. 247; 1 Sneed, 632; 9 Iowa, 455; 12 Minn. 200; 6 Bush, 680.)

The opinion of the court was delivered by

BREWER, J.: In an action in the district court of Wyandotte county, the title of defendant in error to a tract of land in Wyandotte city was adjudged good. The plaintiff in error, defendant below, alleges error. It is unnecessary to inquire as to the title of the defendant below, for unless the plaintiff's title can be sustained the judgment must be reversed. The single question therefore is as to the validity of plaintiff's title. The tract in controversy is a tract situated on the northeast corner of Huron place, in the city of Wyandotte. It is admitted by the pleadings that the title of this tract was in the Wyandotte city company. In the plat made and filed by it, certain grounds were designated as public grounds, the tract in controversy being with others marked "church lot," and in the dedication on the plat appears the following language:

"Also, Huron place, excepting a lot on the southwest corner, one on the southeast corner, and also one on the northeast corner, which are respectively 150 feet square, and dedicated to church purposes. Also, excepting so much as is occupied by the Methodist church south, and by the burying-ground adjoining said church, as represented on the map."

The tracts marked as "church lots" on said Huron place, on the southwest and southeast corner respectively, were in fact conveyed to and used by certain churches, and the question in this case is as to the northeast corner, which is claimed by plaintiff. The case was tried by the court without a jury, special findings of fact made, and the title of the plaintiff sustained. It is not pretended that any formal deed was ever made by the Wyandotte city company to plaintiff, but it is claimed that, upon the testimony, equitably, it is sufficiently shown that the plaintiff was the beneficiary of the reservation or dedication indicated by this plat of the tract in controversy.

The question is a difficult one, and attended by many embarrassments. In the first place, it is claimed by defendant that such plat and dedication was void under the statutes of Kansas respecting dedications; that therefore the title to the ground remained absolutely perfect in the Wyandotte city company; that retaining absolute control, its subsequent deed to the defendant vested in it a good title; that whatever talk, or suggestion, or thought, may be attributed to the city company, as it never culminated in a deed, amounts to nothing; that in Kansas no dedication for church purposes can be sustained, because a church purpose is not a public purpose, and the only dedication authorized under our statutes is that which operates as a conveyance in fee to the county in trust for public uses. Sections 1 and 6 of the act respecting the laying-out of cities and towns read as follows:

"SEC. 1. Whenever any city or town, or an addition to any city or town, shall be laid out, the proprietor or proprietors of such city or town, or addition, shall cause to be made out an accurate map or plat thereof, particularly setting forth and describing: *First,* All the parcels of ground within such city or town, or addition, reserved for public purposes, by their boundaries, course and extent, whether they be intended for avenues, streets, lanes, alleys, commons, or other public uses; and, *second,* all lots intended for sale, by numbers, and their precise length and width."

"SEC. 6. Such maps and plats of such cities and towns, and additions, made, acknowledged, certified, filed and recorded with the register, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended for public uses in the county in which such city or town, or addition, is situate, in trust and for the uses therein named, expressed, or intended, and for no other use or purpose."

This law was borrowed from the state of Missouri, where it was in force as early as 1835, and with no material change has continued in force to the present time. The supreme court of Missouri, in the case of *The City of Hannibal v. Draper,* 15 Mo. 634, construed this statute so as to sustain a dedication for church purposes. In that case it appears that

in 1836 Stephen Glascock filed in the office of the recorder of Marion county, a duly acknowledged plat of the town of Hannibal. Among other memoranda on the map was the following: "Lots numbered 2, 3, 4, in block 26, is intended for 'church grounds.'" The reservation of the public square and landing was made by the declaration, in writing, that particular lots were intended for that purpose. Across the public square, the words "public square" were written, and across the church grounds were written the words "church grounds." Draper claimed the lots in controversy in that case under a quitclaim deed from Glascock, made subsequent to the making and filing of the plat, and had inclosed them. The court held that Draper was affected with notice, and he bought only such title as Glascock pretended to have; that the map was evidence of some pretense to set apart the lots for church purposes, and that the plat was strictly within the provisions of the statute, and conveyed to Marion county the lots for the use of the inhabitants of the town of Hannibal. The court adds:

"It is presumed that in the nineteenth century, in a christian land, no argument is necessary to show that church purposes are public purposes, and that the inhabitants of a town have an interest in ground reserved for such a use. . . . To deny that church purposes are public purposes, is to argue that the maintenance, support and propagation of the christian religion is not a matter of public concern. Our laws, although they recognize no particular religious establishment, are not insensible to the advantages of christianity, and extend their protection to all in that faith and mode of worship they may choose to adopt."

On the one hand, it is claimed that that decision is binding on this court, upon the rule laid down in *Bemis v. Becker*, 1 Kas. 226, that "when one state adopts a law from another, the judicial construction given to the statute in the state where it originated, follows it to the state of its adoption." On the other hand, it is contended that this court is not bound by such construction, because here is recognized as of binding force the absolute separation of church and state, and there-

fore neither the state nor any political subdivision thereof can take property in trust for church purposes, the same not being a public purpose within the purview of our laws. Conceding for the present that the construction placed by the supreme court of Missouri upon the statute is erroneous, and that a church is not a public purpose within the scope of that statute as in force in this state, the question arises whether independent of the statute, a reservation or dedication can be enforced for church purposes. For this, we shall assume that a church is not a public purpose. It is of course not a public purpose in the sense that the state can assume control, or that taxation or eminent domain may be invoked in its behalf. We have no state church, and the settled rule in this country is of entire separation between state and church; and yet that separation is not so complete that the state is indifferent to the welfare and prosperity of the church. This is a christian commonwealth. We believe that the best interests of both are promoted by enforcing entire separation between the state and the church; and yet it is universally recognized that religion lies at the basis of morality, and that for the purpose of securing the best and most thoroughly extended morality, it is fitting that religion and the church be recognized; and everything done by individuals to support and further their interests, is regarded with favor in the law and protected by the courts. To this end every dedication, reservation, or donation to the support of any individual church, and of all alike, is universally upheld.

It is unnecessary to affirm that every dedication must be tested by the mere letter of the statute. That provides for a specific mode, a statutory dedication; and yet it is a matter of common knowledge that a dedication outside of the statute is recognized and enforced in this state and elsewhere. (*Cemetery Association v. Meninger*, 14 Kas. 312.) And the same principle obtains, although the object of the dedication is not strictly a public purpose in the technical and limited sense of the term. In 1 Burrill's Law Dictionary the definition given of dedication is, "appropriation to a certain use or uses."

Ordinarily it is true it is limited to a strictly public use, and yet it may have a broader signification, or at least the principle which underlies and supports it may be invoked to support an appropriation to uses not strictly and technically public.  It would be a useless labor to trace in the old common law the history of the doctrine of pious and charitable uses.  It is enough to say, that after a variety of decisions and legislation the law seemed to culminate and be settled by the statute of 43 Elizabeth, chap. 4, (1601,) commonly called "the statute of charitable uses," and from that time on the validity of appropriations to such uses was considered a settled thing at the common law.  And while in this country that statute as a whole has not been accepted as of force in all the states, yet the principle which underlies it has been universally recognized, at least so far as any question like the one before us is concerned.  Thus in *Trustees v. Canal Co.*, 9 Ohio St. 287, the court said:

"But one of the earliest demands of every social community upon its lawgivers, at the dawn of its civilization, is adequate protection to its property, and institutions, which subserve public uses, or are devoted to its elevation, or consecrated to its religious culture, and its sepulchres; and in a proper case, the courts of our state might be driven into the recognition of some principle analogous to that contained in the statute of Elizabeth, as a necessary element of our jurisprudence."

And in the case of *The Town of Pawlet v. Clark*, 9 Cranch, 332, the supreme court of the United States by Story, Judge, uses this language:

"For the reasons then that have been stated, a donation by the crown for the use of a non-existing parish church, may well take effect by the common law as a dedication to pious uses, and the crown would thereupon be deemed the patron of the future benefice when brought into life.  And after such a donation it would not be competent for the crown to resume it at its own will, or alien the property without the same consent which is necessary for the alienation of other church property."

See also the cases of *Beatty v. Kurtz*, 2 Pet. 566; *Williams*

*v. Presbyterian Society,* 1 Ohio St. 478; 2 Smith's Leading
Cases, 240; *Trustees v. Council of Hoboken,* 33 N. J. Law,
13; *City of Hannibal v. Heirs of Draper,* 36 Mo. 332;
*Schmidt v. Hess,* 60 Mo. 591; *Mankato v. Willard,* 13 Minn.
18; *Reid v. Board of Education,* 73 Mo. 295; 2 Dillon on
Mun. Corp., 3d ed., § 648; *Antones v. Eslava,* 9 Porter (Ala.),
527.

Some of these cases are very strongly in point as to many
of the questions arising in the case at bar.　Take for instance
the case from 2 Peters: in that case it appeared that on the
original plat of an addition to Georgetown, a lot of ground
had been marked "for the Lutheran church," and the Luther-
ans of Georgetown used the place from that time as a place
of burial.　They also erected a log house on the premises,
which was used as a church for public worship by them.
The owner of the ground, during his lifetime, frequently
spoke of it as belonging to the Lutherans.　After a while
the log house fell into decay, and unsuccessful efforts were
made by the Lutherans to rebuild. Fifty years having
passed away, the heirs of the original owner attempted to
take possession of the ground.　There had been no incorpo-
ration of the Lutherans, nor were there any persons who as
trustees could hold the property, yet the supreme court held
that there was a dedication of the lot to public and pious
uses, and that such a dedication would be upheld, although
there was no specific grantee or trustee.　That case therefore
is authority for three propositions: First, that there may be a
dedication of ground to pious uses; second, that the platting
of a tract of ground under circumstances similar to those in
the case at bar is sufficient evidence of a dedication; and
third, that the lack of an incorporation on the part of the
body for whose benefit the dedication was made will not affect
its validity.　Of similar force is the case of *The Town of
Pawlet v. Clark,* 9 Cranch, *supra.*　There the syllabus reads:

"Land at common law may be granted to pious uses before
there is a grantee in existence competent to take it, and in the

meantime the fee will be in abeyance. Such a grant cannot be resumed at the pleasure of the crown."

See also the cases from 1 Ohio St. and 33 N. J. Law, *supra*, as to the effect of a lack of incorporation on the part of the beneficiaries of the dedication. Also, *Post v. Pearsall*, 22 Wend. 472, in which Senator Verplanck says:

"Such an appropriation, our courts have held, will take effect without any formal deed, or any matter of record, or any specific grantee to take the title."

The doctrine of estoppel is invoked, and justly, too. Where a party plats ground into lots and blocks, leaving a certain place for streets, others for public grounds, and sells lots with reference to such plat and upon the faith thereof, he may very properly thereafter be estopped from any attempt to appropriate such streets or public grounds to any other use than that designated in the plat. (*Comm'rs of Franklin Co. v. Lathrop*, 9 Kas. 453.) The same doctrine applies in a case like the present. By this map or plat of Wyandotte city, the lot in question, with others, was represented as church grounds. Persons would buy on the faith of such representations; the fact would be an inducement to parties to locate there; might very naturally determine the locality of the lots they buy. And it would be strange indeed if after parties, on the faith of such a representation, had purchased lots facing on these supposed church grounds and improved them with reference thereto, the original owner could ignore everything and convert these grounds into any private purpose he saw fit. A party buys lots facing on what is represented to him as church grounds, and builds himself a home, and then sees the original owner from whom he bought use the church grounds for a livery stable, a saloon, a gambling house, or a brothel. Surely, here is a very open door for the entrance of the doctrine of estoppel. We think therefore that by the making and filing of this plat, with the language of dedication appearing in it, it must be held that there was a binding dedication of this tract to church purposes; and secondly, that

the fact that the plaintiff was not at the time of the dedication an incorporated society, will not of itself defeat its right to the tract.

Upon these questions we have little doubt; but the question now arises, was the plaintiff the party entitled to the benefits of such dedication? In most of the cases which we have cited there was no question as to the party intended. The specific party was named, as in the case from 2 Peters, where the ground was marked "for the Lutheran church," and there being but one Lutheran church in the place, the identity was beyond question. But this dedication or appropriation was simply to church purposes; the plat was marked "church lot." Now what right has the plaintiff to say it was the party intended by the town company as the recipient of the benefits of this dedication? That a party may be identified by parol testimony in many cases will not be questioned, but can such testimony be resorted to in a case like the present? If it can, does the testimony show that the plaintiff was the party absolutely intended, or does it indicate that there was simply a conditional intention on the part of the town company to give this tract to the plaintiff or some other church organization upon its placing a certain amount of improvements thereon? The records of the town company show that on May 2, 1857, it was resolved that "a church lot be appropriated to the Presbyterian church, New School, on application of Mr. Goodrich." The other tracts marked "church lots" had already been granted to other churches by prior resolutions. Now as the other church lots were already appropriated to other church organizations, and as here was a resolution appropriating a church lot to the Presbyterian church, it is contended that there is a designation of the plaintiff as the intended recipient of the tract in controversy; that the phrase "church lot" is not the same as "a lot for church purposes," but refers specifically to one of the tracts marked on the plat as "church lots." And while as to the other lots in the resolution, or some of them at least, certain conditions were imposed, none such appear in

41—30 KAS.

this. It is a direct, unconditional appropriation of a lot to the Presbyterian church. But there is quite a volume of parol testimony of the statements and representations made by different members of the town company, tending, some of them quite strongly and others remotely, to show that there was an understanding and an intention on the part of the town company that this lot should go to the Presbyterian church. Still, as to the other lots, there were conveyances, and there is no little testimony tending to show that the town company never intended to part with control over this tract until it had received some satisfactory assurances of the erection of a building upon it. After carefully reviewing the testimony, which is quite voluminous, we have come to the conclusion that the findings of the district court must be sustained; that there was sufficient evidence to justify such findings, and that the opposing testimony is not so strong as to justify us in setting them aside. We shall not attempt in detail to notice the different items of testimony, but shall content ourselves with some general statements.

In the first place, this is not a case in which an intention to dedicate is imputed to the owner upon the strength of parol and uncertain testimony. The dedication, the setting apart of this ground for church purposes is positively and conclusively proved, and this not merely by the writing "church lots" on the face of the plat, by the dedicatory words thereon, but also by an entry of a resolution on the records of the town company of February 21, 1857, to this effect: "Also, a lot one hundred and fifty feet square on the northeast, southeast, and southwest corners of Huron place, be and the same are hereby appropriated as church lots."

That an intention to dedicate may be established by parol testimony, cannot be doubted. In 2 Dillon on Municipal Corporations, (3d ed.,) § 636, the author says:

"But the intention may also be established by parol evidence of acts or declarations which show an assent on the part of the owner of the land that the land should be used for public purposes. To deprive the proprietor of his land, the intent to dedicate should clearly or satisfactorily appear."

See also the cases cited in the note, and also *Cemetery Association v. Meninger*, 14 Kas. 312. Now if parol evidence of acts and declarations of the owner is sufficient to establish an intent to dedicate, in other words, to deprive the owner of the use of the property dedicated, surely when the intent to dedicate is conclusively established by record testimony, parol evidence of a less clear and satisfactory nature may be sufficient to indicate the beneficiary. The original owner is not wronged, for his intent to part with the land is a fact proved beyond dispute, and if the question be, which of two parties is intended as the beneficiary, it must turn upon the mere preponderance of testimony.

Again, the appropriation of a lot to the use of the Presbyterian church also appears affirmatively and positively by record testimony. It is true such record does not name this lot as the one appropriated, but the record makes a present appropriation of a lot and an appropriation absolute and without condition, and this within a very short time after the general appropriation heretofore mentioned. It also appears that the other grounds formerly set apart for church lots were already appropriated to other church organizations. So by the record we come to this: A setting apart of three lots for church purposes; an appropriation of an undesignated lot to the Presbyterian church; and a prior appropriation of two out of three lots to other churches. Now when we add to this, evidence of the repeated declarations of the managing men in the town company, made during a series of years, made sometimes in response to applications for this particular lot, that it had been set apart to the Presbyterian church, it would seem a very satisfactory conclusion that the Presbyterian church was the beneficiary of this dedication.

It is true no deed was ever made, and also true that in the final arrangements made between the town company and the church organizations to which other lots were conveyed, conditions of improvement by the grantee were imposed; and it is very probable that the town company, while it intended that the Presbyterian church should receive this lot, also in-

tended to maintain control until or unless satisfactory assurances could be given of a speedy erection of a church building. Much of the parol testimony indicates this, and considering the then situation of affairs, such would seem very probably the fact.    Very naturally, parties laying out a new town desire its lots improved, and hold out inducements to parties to improve.    So when the company laid out this town and set apart certain lots for church purposes, it was the most natural thing for it to desire to retain control until assurances were received of improvements.    But still there is some tesmony, and enough we think to sustain the conclusion of the trial court, that the appropriation of this lot to the Presbyterian church was absolute and without conditions.    Some of the leading members of the town company were Presbyterians, and very naturally would desire to help their church.

Again, the resolution of appropriation was absolute and unconditional, and this resolution was passed within a fortnight after one appropriating a specific lot to another church upon conditions.

Again, the statements made from time to time during a series of years, were many of them to the effect that the lot had been appropriated to the Presbyterian church, not that it would be or even had been conditionally appropriated. Further, it appears that during these early years efforts were made by the Presbyterians to build a church.    A subscription paper was circulated, subscriptions taken and plans discussed with reference to a building on this lot, and having in view the peculiar slope of the ground; the enterprise being finally abandoned through lack of funds and the coming on of the war.    It must also be noticed that this tract was never listed for taxation, the authorities thus impliedly recognizing the validity of its dedication to church uses.

One other fact should also be noticed, which is, that in these early times land was of little value, and that the care, particularity, and precision which to-day obtain in reference to its disposition, must not be expected or looked for in transactions concerning it.    Values were only prospective and con-

ditional; rules of conveyance were often disregarded, and real estate disposed of with as little formality as personal property. So that in an equitable action to-day, it is obviously simple justice to place great reliance upon the acts, conduct, and declarations of parties done and made at or about the time in respect to the titles or transfers of real estate.

Placing all these things together, we do not think that we should be justified in disturbing the decree of the district court, and its judgment must therefore be affirmed.

All the Justices concurring.