BENJAMIN P. MIGHILL & others *vs.* INHABITANTS OF ROWLEY & others.

Essex.    March 23, 1916. — June 22, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Deed,* Delivery.   *Cemetery Corporation.   Municipal Corporations.   Dedication.*

*It seems* that a deed, which was acknowledged five months after its date and was recorded eleven months after its acknowledgment, in the absence of other evidence of the time of its delivery, must be taken to have been delivered on the day of its acknowledgment.

In this Commonwealth a dedication of land to a public use does not take effect without an acceptance by the public.

An attempt or offer made by a burial ground corporation to dedicate a lot marked out upon its land by stakes or bounds for the erection of a soldiers' monument, which was followed five months later by a deed from the corporation to the town of all its land that was accepted by the town without knowledge of the attempt or offer of the corporation to dedicate the lot for the purpose named, such purpose not being known by the town or by the public until nearly forty years after the conveyance to the town, does not constitute a completed dedication, there having been no acceptance by the public.

LORING, J.   The undisputed facts in this case were these: In 1871, the burial ground, which originally belonged to the First Parish and was the only burial ground in Rowley, was owned by the Burial Ground Corporation.   At a meeting of the corporation held on July 24 of that year, it was voted to transfer all the real estate of the corporation to the town.   It was further voted "that all money remaining after the bills are paid" should be placed in the hands of ten trustees, five of whom were to be the three selectmen, the town treasurer and the town clerk, while the remaining five were to be and were appointed by the meeting; and that "said trustees deposit all money in their possession . . . together with such amount as may at any time be added, in some savings bank, there to remain until the principal and interest . . . shall amount to eighteen hundred dollars, said fund shall then be expended in erecting a Soldiers' monument in Rowley."   At a town meeting held on August 5, 1871, it was voted by the inhabitants of Rowley "to accept the doings of the Burial Ground Corporation whereby

they voted at a meeting held July 24, 1871, to transfer all the real estate of said corporation to the town of Rowley."

Pursuant to these votes a quitclaim deed was drawn up dated October 2, 1871, by which the Burial Ground Corporation conveyed to the defendant town "all our right title and interest in and to that lot of land in said Rowley known as the 'Rowley Burial Ground.'" In this deed there was a covenant against "incumbrances made or suffered by us [the grantor] except for the uses and purposes of burial grounds by the sale of lots and otherwise as appears by our records." This deed was acknowledged on March 4, 1872, and was recorded on February 6, 1873. Under these circumstances the date of delivery of the deed must be taken to have been the date of its acknowledgment, namely, on March 4, 1872.

"In February, 1872" the ten trustees created by the vote of the Burial Ground Corporation on July 24, 1871, met for the first time. An "organization of the trustees" was then effected and the "savings bank [was] designated wherein the money should be put." In 1913, the deposit having reached the sum named in the original vote, the trustees determined to erect a monument on a lot in the burial ground hereinafter described, and made a contract therefor. At a meeting of the inhabitants of the town in November of that year, it was voted not to allow the proposed Soldiers' monument to be erected in the burial ground and directing the board of selectmen, the town clerk and the town treasurer, who by virtue of their offices were members of the board of trustees "to vote and work" as members of the board of trustees "to have the proposed Soldiers' monument located on Rowley Common." Thereupon this bill was brought to enjoin the town, the cemetery commissioners of the town, the selectmen, the treasurer and the town clerk from interfering with the plaintiffs (who were the other members of the board of trustees) in erecting the proposed monument of the lot in the burial ground hereinafter described.

There were some facts, however, which were in dispute. They were testified to by George B. Blodgette, Esquire, a member of the bar. The judge who heard the case * gave credit to Mr. Blodgette's testimony. We see no reason for coming to a different

---

* *Keating*, J., who made a final decree granting the injunction prayed for. The defendants appealed.

conclusion. Mr. Blodgette's story was this: In September next after the July meeting of the Burial Ground Corporation (at which it was voted to transfer its real estate to the defendant town) a meeting of that corporation was held at which it was voted that a lot in the burial ground be laid out on the westerly side of the main avenue "to balance the minister's lot, and, as near as may be, of like size and like distance from the front fence and the main avenue as the ministers lot now is. When so laid out it shall remain forever for the use of our trustees chosen at our last meeting to erect and maintain thereon a soldiers monument as voted at our last meeting," and Mr. Blodgette, a Mr. Harris and one other were appointed a committee "to lay out such lot and mark the same with stakes at the corners." The next morning after this vote was passed this committee pursuant to that vote laid out a lot in the cemetery twenty-five feet square and marked the corners thereof with cedar stakes. These stakes remained at the corners of the lot until 1891, when Mr. Blodgette, at his own expense, caused stone posts to be substituted for the cedar stakes. The lot as then located remains thus marked. The records of the Burial Ground Corporation have been lost. Pursuant to a vote of the corporation to that effect, passed at the meeting held on July 24, 1871, the records of that meeting were entered upon the records of the defendant town next after the record of the vote of the defendant town accepting the action of the Burial Ground Corporation taken on July 24, 1871. But no record of the meeting held in September, 1871, was copied on the records of the town.

The defendant town took the burial lot as a volunteer. As a volunteer it took what its grantor (the Burial Ground Corporation) had. If there was a complete dedication at that time, the title of the town is subject to the rights given by the dedication.

This action on the part of the Burial Ground Corporation shows an attempt or offer on the part of the Burial Ground Corporation to dedicate the lot thus marked out as a lot for the erection of the proposed soldiers' monument. If that is enough to make a valid dedication, the plaintiffs have made out a case. But, if that is not enough, the plaintiffs have failed. There is nothing to warrant a finding that the town continued the attempt or offer of the Burial Ground Corporation to make the dedication.

It was said in *Abbott* v. *Cottage City,* 143 Mass. [521, 525, "The necessity of acceptance, in any form, of a gift to public uses has been a little over-insisted upon, perhaps, from a desire to bring the doctrine of dedication within some more general principle of law," and it also was said that "acceptance will be presumed if the gift is beneficial, and user is evidence that it is beneficial." In addition it was there pointed out that in New Jersey no acceptance is necessary. But the subsequent case of *Attorney General* v. *Abbott,* 154 Mass. 323, was decided on the ground that an acceptance is necessary to complete a dedication. And in other jurisdictions the same rule generally obtains. See for example 9 Am. & Eng. Encyc. of Law, (2d ed.) 43 and cases there collected. We are of opinion that that must be taken to be the law of the Commonwealth.

In the case at bar there was no acceptance in the way in which a dedication is usually accepted. It was said in *Attorney General* v. *Abbott, ubi supra,* at page 328: "The acceptance is by the public at large, and the principal thing to show it is use by the public." In *Attorney General* v. *Onset Bay Grove Association,* 221 Mass. 342, 347, speaking of acceptance it was said: "The entrance of the public upon them and the enjoyment of the privileges understood to have been offered fully appears." In the case at bar there has been no acceptance in the usual way, namely, by user by the public.

Whether there can be an acceptance in some other way need not be considered. For example, it is not necessary to consider whether a vote by the trustees to accept would have been sufficient. No such vote was passed at the meeting of the trustees in February, 1872, when an organization of the board of trustees was effected and a savings bank was selected in which the funds of the trustees were to be deposited. So far as appears the board did not then know of the vote of the corporation or of the laying out of the lot in accordance with that vote. Two of the trustees (Blodgette and Harris) knew of the fact. But so far as appears they did not communicate the fact to the other members of the board. More than that, there is no evidence that any one but Blodgette and Harris and the person who testified under R. L. c. 175, § 66, to Harris's statements, ever knew of that fact until the dispute arose which gave rise to this suit. A copy of the vote

directing that the lot be laid out was not entered on the records of the town. So far as appears the attempt or offer to dedicate was not known by the public until nearly forty years after the conveyance to the town in March, 1872, and, when known, it was refused by the town.

Of the cases relied on by the plaintiffs there is one which perhaps ought to be referred to. In *Commissioners of Wyandotte County* v. *Presbyterian Church*, 30 Kans. 620, it was held that a dedication to church purposes was made out by proving that on a plat of the land laying out Wyandotte City and duly recorded in the registry of deeds, a certain lot of land was designated a "church lot," and, as matter of fact, was reserved for the respondent church. It was held that the dedication was complete. Of this it is to be remarked that the dedication of that lot was parcel of a plat of the whole city, and that the plat as a whole was recorded (as the law required) in the registry of deeds and was accepted by user. And in that case the public had knowledge of the dedication. In both respects that case did not go as far as we are asked to go in the case at bar.

We are of opinion that the title of the town is not affected by the attempted dedication of this lot to the erection of a soldiers' monument upon it.

The plaintiffs have made these additional contentions, namely: (1) "The committee had no authority to make such a deed as would bar the trustees from using the lot." (2) "It is certain that the committee could not and did not intend to convey the burial ground free of the rights of the trustees and if the deed did not express their intention it should be reformed. Equity treats that as done which ought to be done, and the decree restraining the defendants should stand." There are many difficulties in the way of maintaining these contentions. Neither one of them is set up in the bill and so neither one was tried out at the hearing. The deed in its present form has been acquiesced in for over forty years since it was delivered. The plaintiffs are strangers to the deed. Apart from a possible estoppel it is hard to see how the deed could have been drawn so as to create in the trustees (who are strangers to the deed) a right to use the lot laid out for the purpose of erecting and maintaining a soldiers' monument. But passing by these difficulties it is enough to say of these contentions

that neither one of them was made out on the evidence taken by the commissioner. The committee who conveyed the burial ground to the town was appointed before the vote to lay out the lot "for the use of our trustees . . . to erect and maintain thereon a soldiers' monument." When the vote to lay out the lot for a soldiers' monument was passed subsequently it was not suggested that the authority theretofore given to the committee to convey the cemetery should be affected by the dedication then attempted, nor that the matter of the attempted dedication should be dealt with in the deed. On the evidence the deed was within the authority of the committee and we so find. On the evidence too there was no mutual mistake in the deed. So far as appears neither the town nor the committee appointed by the town to act with the committee of the corporation in the transfer of the cemetery by the corporation to the town ever knew of the vote to lay out the lot for a soldiers' monument. On the evidence the committee of the burial ground corporation must be taken to have thought that a valid dedication had been made and that for this reason they did not undertake to deal with that matter in the deed. Doubtless the advisers of the corporation made a mistake in thinking that a valid dedication had been made. But that does not affect the validity of the deed nor give any one (much less one who is not a party to it) a right to have it reformed.

The findings and rulings in the former suit between the same parties were properly excluded. So far as appears that suit never went to a final decree. Under these circumstances other objections to this evidence need not be considered.

The decree appealed from must be reversed and a decree entered dismissing the bill.

*So ordered.*

*A. P. White,* for the defendants.
*H. I. Bartlett,* for the plaintiffs.