MELVIN F. HORN & another *vs.* CREST HILL HOMES, INC. & another.

Middlesex.    November 2, 1959. — February 8, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Easement. Real Property*, Encumbrance, Dedication.

Even if a drainage easement from a way across a lot in a development in a town could be acquired by the town through dedication by the developer and an offer to dedicate by him could be found from the fact that such easement appeared on plans filed by him with the town's board of survey and with his application for a building permit, there was no dedication making the easement an encumbrance on the lot as against one to whom, shortly after the filing of such plans, he conveyed the lot by a quitclaim deed and who had no notice or knowledge of his offer, where nothing occurred showing an acceptance of his offer by the town until after the conveyance. [365–366]

Where the developer of a development of land in a town installed a drain-pipe from a way across a lot in the development and afterwards conveyed the lot by a quitclaim deed to one who had no notice or knowledge by anything in the deed or of record or otherwise of the pipe or any drainage easement in the lot, and the town never acquired such an easement although it "accepted" the way, it was error, in a proceeding by the grantee in such deed against the grantor, to assess damages against the defendant on the ground that the plaintiff had no right to remove the pipe since it had "been made a part of the town's drainage system" and there was accordingly an encumbrance on the lot as against the plaintiff; he did have a right to remove the pipe without liability to either the town or the defendant, and his remedy was to do so.  [364–365, 366]

BILL IN EQUITY, filed in the Superior Court on November 7, 1956.

The suit was originally brought against Crest Hill Homes, Inc.  The town of Framingham was afterwards joined as a defendant.  The defendant Crest Hill Homes, Inc., appealed from a final decree entered after hearing of the suit by *Rome, J.*

*Anthony DiCicco, Jr.,* for the defendant Crest Hill Homes, Inc., submitted a brief.

*Louis A. D'Angio,* for the plaintiffs.

SPALDING, J.  The defendant Crest Hill Homes, Inc. (hereinafter called Crest), was the owner of numerous lots of land in a development in Framingham called Oakvale. These lots were shown in a subdivision plan dated January 26, 1953.  On December 1, 1954, Crest conveyed lot 99 in the subdivision by quitclaim deed to the plaintiff Horn. On March 15, 1955, Crest conveyed lot 100 by quitclaim deed to the plaintiff Cooper.  Lots 99 and 100 are contiguous and there is a drainpipe running along the boundary line. This suit is brought to compel the removal of the drainpipe by Crest and the defendant town.

From the findings of the judge and the evidence, which is reported, we summarize the following facts:  Prior to December 1, 1954, and prior to the contracts of sale of lots 99 and 100, Crest installed a drainpipe which ran along the boundary of the lots from a catch basin on Whittemore Road in front to a culvert in the rear.  At that time Whittemore Road

was an unaccepted street. The pipe was installed "without notice thereof to, or knowledge by, the plaintiffs." There is no reference to the pipe in the deed of either plaintiff. In September, 1955, after the plaintiffs had acquired title to their lots, the pipe was connected up by Crest with the culvert in the rear.

The town of Framingham prior to the transactions here involved had taken the necessary steps to make the subdivision control law operative. See G. L. c. 41, §§ 81K–81GG. On February 3, 1953, Julia Thurlow, who then owned the Oakvale subdivision, agreed in writing to be subject to the specifications and conditions which the board of survey of the town had established for a proposed subdivision plan of Oakvale. On February 10, 1953, the plan for the proposed subdivision was approved by the board of survey and on February 25, 1953, it was duly recorded in the appropriate registry. In neither the plan nor in the specifications and conditions relating thereto is there any indication or provision relating to a drainage easement along the boundary of lots 99 and 100. Such an easement does appear on a plan of Oakvale introduced in evidence, but there is no evidence that this plan was ever recorded. The drainage easement also appears on individual lot plans filed with the board of survey in July, 1954 (prior to the sale of either lot), and in the plans submitted by Crest in conjunction with its applications for building permits in August, 1954. It does not appear that these plans were ever recorded or came to the attention of the plaintiffs.

The judge found that "at no time did the town demand or take any easement or other restriction or encumbrance against . . . lots 99 and 100"; that the installation of the drainpipe along the boundary of these lots was done entirely by Crest; and that the installation was done by Crest in order to obtain approval of the proposed subdivision. Concluding that there was no basis for imposing liability on the town, the judge ordered the bill dismissed as to it.

With respect to Crest the judge found that "though no easement [of drainage] was created in . . . [their] land, the

plaintiffs nevertheless have no right to remove the same from their land under G. L. c. 41, § 81Y, the same having been made a part of the town's drainage system. It is therefore a restriction of use, and an encumbrance upon, the property so far as the plaintiffs are concerned." He ordered damages in the sum of $850 to each plaintiff. From a decree in accordance with this order, Crest appealed.

Since the conveyances to the plaintiffs by Crest were by statutory quitclaim deeds, the underlying question is whether there was an encumbrance "made by the grantor" which could give rise to a claim or demand by "persons claiming by, through or under the grantor." G. L. c. 183, § 17.

It will be noted that the sole basis for the award of damages against Crest is that the plaintiffs cannot remove the pipe because it has become part of the town's drainage system. As to how it became a part of that system the decision below does not say. Admittedly, no easement of drainage over the plaintiffs' land was ever taken by the town by eminent domain. But even if there had been, the rights taken by the town would not have been "by, through or under" Crest. *Weeks* v. *Grace,* 194 Mass. 296. The plaintiffs apparently take the position that Crest in some manner granted an easement of drainage to the town. Such an easement, of course, would be an encumbrance. *Siegel* v. *Shaw,* 337 Mass. 170. But there was no express grant of such easement. If the town acquired any rights of drainage in the lots such rights would have to rest on a dedication of some sort. We assume, without deciding and without intimation one way or the other, that such rights may be acquired by dedication.[1] But even on such an assumption we find no evidence that would support a finding of dedica-

---

[1] We have failed to find any Massachusetts cases that consider whether a drainage easement can be transferred by means of a dedication. The typical Massachusetts cases dealing with dedication concern streets (*Moffatt* v. *Kenny,* 174 Mass. 311), parks (*Attorney Gen.* v. *Onset Bay Grove Assn.* 221 Mass. 342), and burial grounds (*Mighill* v. *Rowley,* 224 Mass. 586); see generally Tiffany on Real Property (3d ed.) § 1098. However, there are indications from other jurisdictions that sewers and drains may be dedicated. See *Doud* v. *Cincinnati,* 152 Ohio St. 132; *Vendetti Appeal,* 181 Pa. Super. Ct. 214, 221–223. See also Washburn on Easements and Servitudes (4th ed.) p. 215.

tion. Conceivably the filing of the individual lot plans with the board of survey and the filing of the plans attached to the applications for building permits, on all of which appeared a drainage easement along the boundary of the lots, might be deemed to be an offer to dedicate. See *Attorney Gen.* v. *Onset Bay Grove Assn.* 221 Mass. 342, 348–350; Am. Law of Property, § 12.134; McQuillin on Municipal Corporations (3d ed.) § 33.30. But there must be an acceptance, either express or implied, of such an offer. *Hemphill* v. *Boston,* 8 Cush. 195, 196–197. *Mighill* v. *Rowley,* 224 Mass. 586, 589. There is nothing, however, to show any express or implied acceptance of such an offer either by the public or by the town prior to the conveyances to the plaintiffs. The only evidence bearing on an acceptance by the town came from one Mackey, the town's chief engineer, who testified that Whittemore Road (the street in front of the plaintiffs' property) was accepted by a vote of the town on March 21, 1956; "that [it] follows when you accept a street, you accept the drainage system," and that by drainage system he did not mean that existing in the street but the system existing on land abutting the street. If this be treated as an acceptance of an offer to dedicate it does not aid the plaintiffs, for it occurred after they had acquired title to their respective lots. We are of opinion that an acceptance at that time of Crest's offer of which the plaintiffs had no knowledge could create no rights in their property. We are mindful that an offer to dedicate may be accepted by frequent and long continued public use (*Hemphill* v. *Boston,* 8 Cush. 195, 196–197; *Attorney Gen.* v. *Abbott,* 154 Mass. 323, 328) but evidence of such use is lacking here. We hold, therefore, that even if rights of drainage can be acquired by dedication they were not so acquired in the case at bar.

It follows that the decree awarding damages to the plaintiffs was erroneous. It does not follow, however, that the plaintiffs are without any remedy. Their remedy is in their own hands; they may remove the pipe without liability either to the town or to Crest. The decree is reversed and

a new decree is to be entered dismissing the bill as to both the town and Crest. Crest is to have costs of this appeal.

*So ordered.*