WILLIAM F. NYE & others *vs.* JOHN Q. A. WHITTEMORE
& others.

Bristol. October 23, 1906. — November 26, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Equity Pleading and Practice. Rules of Court. Corporation. Onset Bay*
*Grove Association. Camp Meeting.*

Under Superior Court Equity Rules 21 and 31, a party to a suit in equity by a
special order of court may be allowed to file exceptions to a master's report
more than a year and a half after the report was filed.

In a suit in equity the following facts appeared: The Onset Bay Grove Association
was created by St. 1877, c. 98, "for the purpose of holding personal property
and real estate, where a wharf, hotel and other public buildings may be erected,
and building lots sold or leased for the erection of private residences or cot-
tages, under such rules and regulations as the association may prescribe." The
charter further provided that "all buildings, booths or other structures erected
on or attached to the grounds of the association shall for the purposes of tax-
ation be considered real estate and taxable in the town of Wareham." The
incorporators were spiritualists and established a spiritualists' resort. Camp
meetings are a usual incident of such a resort and necessary for its establish-
ment, and camp meetings were carried on by this corporation in buildings con-
structed for the purpose. *Held,* that these facts warranted a ruling that the
charter impliedly authorized the corporation to use its property as a summer
resort and to make it an attractive summer resort for spiritualists by providing
a camp meeting there; and that it was right for a master to rule that on the
facts found by him as above described "it was within the corporate powers of
the association to expend money to carry on camp meetings."

BILL IN EQUITY, filed in the Supreme Judicial Court on July
16, 1898, by William F. Nye and other stockholders of the
Onset Bay Grove Association, a corporation created by St. 1877,
c. 98, to cancel a certain lease described in the opinion and to
compel the defendant lessees to account for all moneys received
by them from the leased property.

The case was referred to Arthur M. Alger, Esquire, as master.
The material portions of his report are quoted in the opinion.

The master's report was filed on September 29, 1902. On
April 20, 1904, the plaintiffs filed exceptions to the master's re-
port. On the same day *Morton, J.* made the order "Motion to
file exceptions allowed if court has authority to allow the same."

The plaintiffs' first two exceptions were to the following rul-
ings made by the master:

" 1. That on the facts found the plaintiffs are barred from questioning the authority of the corporation to carry on camp meetings, and that it is accordingly not open to them to assail the lease, on the grounds that it was an evasion of the charter of the Onset Bay Grove Association.

" 2. That on the facts found by the master it was within the corporate powers of the association to expend money to carry on camp meetings."

There were two other exceptions, which were not argued.

On December 15, 1904, *Braley,* J. made the following final decree:

" And now this case came on to be further heard at this sitting, on the coming in of the master's report, and was argued by counsel upon the exceptions alleged by the plaintiffs to the report on April 20, 1904; and thereupon, upon consideration thereof, it appearing that all the payments required to reimburse the corporation, and, as found by the master, having been fully paid to it, it is ordered, adjudged, and decreed that said alleged exceptions be overruled, and the master's report confirmed, and the lease heretofore made by the corporation to the individual defendants be adjudged void and of no effect, and that the motion of the plaintiff Nye to be allowed his disbursements for counsel fees and expenses taxed as between solicitor and client, and the motion of the defendants for reimbursement for money paid for taking evidence, all to be paid by the corporation, are severally denied."

The plaintiffs appealed.

*J. L. Gillingham,* for the plaintiffs.

*T. E. Grover,* for the defendants.

KNOWLTON, C. J.   This is a bill brought by stockholders of the Onset Bay Grove Association to set aside a lease made by the corporation to an association of individuals, all of whom were directors of the corporation.   We assume, in favor of the plaintiffs, that the exceptions to the master's report were properly allowed to be filed after the expiration of fifteen days, under a special order of the court.   Superior Court Equity Rules 21, 31.   *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576.   See *Hack* v. *Nason,* 190 Mass. 346.

The most important question in the case is whether this cor-

poration, which was created by St. 1877, c. 98, has power under its charter to conduct a camp meeting on its grounds. The statute is peculiar. By the first section the nine incorporators and their associates and successors are " made a corporation by the name of the Onset Bay Grove Association to be established and located in the town of Wareham, for the purpose of holding personal property and real estate, where a wharf, hotel and other public buildings may be erected and building lots sold or leased for the erection of private residences or cottages, under such rules and regulations as the association may prescribe." The capital stock is to be not less than $2,500 nor more than $25,000. Section 3 provides that " All buildings, booths or other structures erected on or attached to the grounds of the association, shall for the purposes of taxation be considered real estate and taxable in the town of Wareham." By § 4 it is made the duty of the officers or agent of the association to furnish annually to the assessors of the town a list of the names and residences of all owners of buildings or other taxable property erected upon the grounds of the association.

There is nothing in the statute, except that which we have stated, to show what the business of the corporation is to be, or what it is to do with the property that it is to hold. Enough appears, however, to show that it may use the property in some proper way. The meaning is the same as if the words " and using " were inserted in the statute after the words " for the purpose of holding." A wharf, hotel and other public buildings may be erected, as well as private buildings, booths and other structures. The express authority to the corporation is only to hold the property. The nature of the implied authority to use it must be ascertained by inference from the language of the statute, and from the conditions and circumstances existing at the time of its enactment. A part of the findings of the master are as follows:

" 2. It appears from the evidence outside the charter, that the incorporators of the Onset Bay Grove Association were spiritualists, and that they came together for the purpose of acquiring and developing some place upon the seashore as a summer resort for spiritualists and incidentally as a site for spiritualists' camp meetings. Pursuant to this purpose the cor-

poration when formed purchased a large tract of land on Onset
Bay in the town of Wareham, and proceeded to lay out parks,
streets and building lots, to construct a wharf, and to erect cot-
tages, an auditorium and a temple for the holding of camp meeting
exercises, and other buildings.   Many lots were sold, principally
to spiritualists, and cottages built thereon by the owners; hotels,
boarding houses and stores were put up by individuals, and the
place, under the name of Onset, in time became well known
as a popular summer resort largely frequented by spiritualists,
and also by others attracted by the natural advantages of the
locality.   In June, 1877, public exercises were held in the audi-
torium on the grounds of the corporation, under the auspices of
the corporation, for the purpose of dedicating the grounds 'to the
principles of spiritualism.'   In the month of July following, the
corporation held a camp meeting, and continued to hold such
meetings annually, without question, until 1895.

"These meetings were largely attended both by cottagers and
by persons from abroad, and undoubtedly constituted 'a princi-
pal feature of the resort.'   The services at the meetings con-
sisted of addresses on spiritualism by speakers engaged for the
purpose, and music furnished by a band.   The meetings were
held in the auditorium or in the temple and were arranged by
and·under the control of the corporation.   All the expenses,
including such items as police service, advertising, printing,
speaking and music, were paid by the corporation.

"3.   If Onset was to be developed as a spiritualist summer
resort, it was obviously necessary to establish the meetings in
question in order to attract spiritualists to the place.

"A spiritualist summer resort is a place in the country or
at the seashore where spiritualists gather during the summer
months to attend, in the course of vacation or outing, the public
exercises of their sect conducted under the name of camp meet-
ings.   It does not appear that the corporation had any means
of maintaining these meetings at Onset other than by carrying
them on itself; and as a practical matter it would seem that
if the meetings were to be held it was necessary for the corpo-
ration to undertake them.   Camp meetings are ordinarily held
in tents or booths, but they are sometimes held and may be more
conveniently held in buildings of a permanent character.   The

auditorium erected by the corporation was designed for meetings in the open air in pleasant weather, and the temple for indoor meetings in rainy weather. If camp meetings were to be carried on at Onset, the erection of these buildings for the purpose was proper and reasonably necessary.

"4. At the outset and until the year 1895 it appears to have been assumed by all persons in interest that the corporation had power under its charter to carry on camp meetings, and that to do so was one of the objects of its existence. The meetings were conducted by the corporation until 1895, a period of eighteen years, with the knowledge and consent of all the stockholders. . . . It further appears that Mr. Nye was a promoter of the corporation, and one of the incorporators, and that as such he agreed with his associates that the corporation when formed should purchase the land referred to at Onset, and develop it as a spiritualist summer resort by carrying on camp meetings."

In 1895 the plaintiff Nye, who as a stockholder and director of the corporation had actively participated up to that time in carrying on the camp meetings, came to the conclusion that, as a matter of business policy, it was desirable that the corporation should cease to hold such meetings. He attempted unsuccessfully to induce his associates to give up that part of their enterprise, and, after efforts of different kinds, (see *Nye* v. *Storer,* 168 Mass. 53; 1 Opinion of Attorney General, 642,) he sold one share of stock to each of the other plaintiffs in this suit, and he and they brought the bill which is now before us. In the meantime his associates upon the board of directors had made a lease to themselves as an association of individuals for the term of seven years from July 1, 1895, which included nearly all the property of the corporation, with a stipulation that the rent to be paid should be one half of the net profits from the use or occupation of the premises. The master has found that the lease was made without any motive of personal gain to the lessees, but because it was feared that the corporation could not lawfully maintain the camp meetings, and because they desired to evade the law if the law forbade the maintenance of such meetings by the corporation.

The master has found that the lease was void, as made under a secret trust which involved a method of carrying on the cor-

porate business unauthorized by the charter, because it put all the property of the corporation into the control of others than its officers for a term of years. No exception was taken to the findings of the master in this particular, and we need not consider them in detail.

The master's conclusions of law upon the main question are stated in the report in part as follows:

" 5. The act expressly empowers the corporation to erect and hold public buildings. . . .

" 6. The term public buildings in the act is unaccompanied by words of explanation or limitation. Whether or not, then, it is used in such a sense as to include camp meeting buildings depends upon the general scheme or object of the act.

" 7. The incorporation of the associates named and the powers specifically granted them, namely, to hold real and personal property in Wareham, to construct a wharf, to erect a hotel and other public buildings, and to lease and sell lots for the erection of cottages and private residences, taken in connection with the corporate name adopted by the associates, ' Onset Bay Grove Association,' show plainly, in the absence of any qualifying words, that the object intended and authorized by the act was the formation of a corporation for the purpose of establishing a summer resort of such kind as the corporation might determine, on Onset Bay in the town of Wareham.

" 8. The corporation, as matter of fact, determined to establish a spiritualist summer resort. That was within the object of the act, and was to be expected, the incorporators being spiritualists. As a matter of fact, camp meetings are a usual incident of a spiritualist summer resort and are necessary to its establishment. That the Legislature had this in mind and proceeded upon the theory that the corporation was to carry on camp meetings may be gathered from the title of the act, ' The Onset Bay Grove Association,' and from the provision in the act for the taxation of booths on the grounds of the association. Camp meetings are usually located in a grove and are held in booths. (See title ' Camp Meeting ' in 5 Am. & Eng. Encyc. of Law, 2d ed., 109.) As no probable purpose is apparent, other than the holding of camp meetings, which would call for the erection of booths upon the grounds of the corporation, the inference is

that it was contemplated that they should be erected for that use. While camp meetings are held in buildings of a temporary nature known as booths, they may be more conveniently held in buildings of a permanent character. In view of the indications in the act that it was understood that camp meetings were to be carried on, and taking into account the propriety and necessity of erecting buildings for camp meeting purposes in order to carry out the object of the act, it seems reasonably certain that the term ' public buildings ' in the act, is used in such a sense as to include camp meeting buildings. The act is, therefore, to be construed as conferring upon the corporation an express power to erect and hold buildings in which to carry on camp meetings. This construction is not inconsistent with any of the provisions of the act and best harmonizes with its object. It violates no law or policy of the state, and it accords with the practical construction of the act by all persons interested, uninterruptedly for eighteen years.

" 9. An express power to erect and hold buildings suitable for camp meeting purposes thus appearing, the authority must be implied, as a necessary incident of that power, to employ the usual and proper means of utilizing the buildings for the purposes for which they were erected. What is usual and proper in a given case depends upon the circumstances of the case. To illustrate : Buildings designed for use as stores are, as a rule, built to be let to persons desiring to engage in the business of keeping a store. If a corporation should be chartered to acquire land and build stores thereon, it would not be necessary or contemplated that the corporation should carry on the grocery or dry goods business in its stores. On the other hand, a church is not ordinarily built with a view to leasing it. If a body of Unitarians should obtain a charter to erect and hold a church building, it would be understood that they were to carry on in it the services of their denomination, and to do so would be the usual and proper means of utilizing the building. On the facts which I have found, it appears to me that the carrying on of camp meetings by the corporation in the buildings which it erected for the purpose is a proper and usual means of giving effect to the power to erect and hold such buildings, and that it is a necessary incident of that power."

Little need be added to the findings and reasoning of the master on this point. There are different provisions in the act of incorporation which indicate that the association was not to be an ordinary land company, but was to occupy and use its property as an association. The provisions as to taxation and notices to the assessors imply that booths or small cottages, which would not be real estate, were expected to be built and owned by individuals. It was expected that the wharf and hotel and other public buildings might be used by the corporation in connection with its enterprise. The sale and lease of building lots for the erection of private residences or cottages is to be "under such rules and regulations as the association may prescribe." In this there is an implication that the corporation would be so connected with the management and use of the property as to desire rules and regulations for the holding by individuals.

The conclusion of the master that the statute impliedly authorizes a use of the property by the corporation as a summer resort is well warranted, and the finding of authority to make it a summer resort especially attractive to spiritualists, and for that purpose to provide for a camp meeting there, is equally warranted.

The second exception to the master's report is therefore overruled. The view that we have taken of this part of the case makes it unnecessary to consider the first exception, which presents the only other questions argued by the plaintiffs.

*Decree affirmed.*