ATTORNEY GENERAL vs. ONSET BAY GROVE ASSOCIATION.

Plymouth.    March 18, 1914. — May 24, 1915..

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

·Equity Pleading and Practice, Waiver of demurrer. Parks and Parkways, Dedication. Dedication. Easement, Of public. Seashore.

In a suit in equity, where the defendant has filed a demurrer and also an answer, the reference of the case to a master to find the facts without any objection on the part of the defendant and the appearance of the defendant at the hearings before the master are a waiver of the demurrer.

A dedication of land to the use of the public for a park or pleasure ground need not be in writing and may be shown by oral statements of the landowner or of those authorized to act in his behalf, or by acts of the landowner from which his intention can be inferred.

Upon an information in equity filed by the Attorney General at the relation of the people of a seashore resort established by a corporation, whose purposes were to provide a place for holding camp, grove and other meetings of a social and religious character and to create and establish a popular summer resort, brought to enjoin the corporation from selling or obstructing certain parks, groves and shore fronts the use of which was alleged to have been dedicated to and accepted by the public, on the findings contained in a master's report it was held, that there was evidence that the corporation by its acts and declarations had dedicated the use of the lands in question to the public and ample evidence of acceptance by the public, and that the corporation should be enjoined from selling, leasing or obstructing its parks, groves and shore fronts which were subject to the public easement thus acquired.

INFORMATION IN EQUITY, filed in the Supreme Judicial Court on July 5, 1899, by the Attorney General at the relation of the people of the village of Onset, alleging that the defendant, a corporation organized under the laws of this Commonwealth, in 1877 bought a large tract of land in the town of Wareham known as Oak Grove Bluff and containing about one hundred and fifty acres; that the business of the defendant and the purpose for which it was organized was the holding of personal property and real estate where a wharf, hotel and other public buildings might be erected, and building lots sold or leased for the erection of private residences or cottages; that in pursuance of the general plan of conducting this business the defendant divided the tract into lots, which it offered to the public for sale, and laid out streets,

avenues and paths through and over the tract, and marked and reserved certain open spaces as and for parks, which streets, avenues, paths and parks the defendant dedicated as such to the public forever, and the public accepted the same; that the defendant made plans of the tract, showing thereon what portions of the tract were to be sold or leased for cottages or buildings, what portions were to be reserved for parks and what portions were to be used as streets, avenues and paths, and caused the plans to be recorded in Plymouth County; that the defendant published numerous copies of these plans and many other and divers advertisements, pamphlets, circulars and notices, and gave them wide and extensive circulation for the purpose of attracting the public and inducing the public to buy the lots of land that the defendant had for sale; that the tract had a very long shore front on the east, south and west; that along a large part of the shore front on each side was a high bluff, and along this bluff all around the tract, a short distance back from high water mark, there was laid out on the plan and was wrought and constructed upon the ground a street or avenue called on the east shore the East Boulevard, on the south shore the South Boulevard and on the west shore the West Boulevard and that the whole of the tract set apart for sites or lots for buildings or cottages, as indicated on the plans and on the advertisements and as staked out on the ground, was on the inner or land side of the boulevards; and that in and by the plans and advertisements, and in and by the construction of the boulevards and the laying out of the tract of land, it was clearly indicated that, with the exception of one wharf, the whole of the water front was to be left open and unobstructed, and that no part of it was to be sold for or occupied by buildings; that the association dedicated to the public the whole of the shore as a bathing beach and as a park and as an open space, to the use of the public as such bathing beach, park and open space forever, and that the public duly accepted the same; that the defendant, by means of the plans and advertisements, and by means of many and repeated oral promises and declarations, covenanted and agreed with the public that the parks, streets, avenues, paths and shore fronts should be forever kept and used respectively as parks, streets, avenues, paths and shore fronts for bathing,

boating and fishing, substantially as indicated upon the plans and as then laid out upon the ground, and that the same should be and were dedicated to the public forever for such use by the public; that the public had faith in the covenants, promises and agreements of the defendant and relied upon the same, and that many hundreds of persons bought lots of land in the tract and erected many costly buildings and cottages thereon; that upon the tract there was at the time of the filing of the bill a large and flourishing village known as Onset; and that during the summer months hundreds and thousands of people daily resorted to and used such parks, streets, avenues and paths, and the shore front for bathing, boating, fishing, recreation and pleasure; that the defendant claimed the absolute ownership of these parks, streets, avenues, paths and shore fronts, and denied the right of the public freely and uninterruptedly to use and enjoy the same as parks, streets, avenues and paths, and for bathing, boating and fishing, and the uninterrupted view of the water and the full enjoyment of the cool and refreshing breezes from the water; and that the defendant, in defiance of the rights of the public and in violation of its promises, covenants and agreements made to and with the public in regard to the parks, streets, avenues, paths and shore fronts, had erected, and permitted to be erected, cottages and buildings on lands dedicated to the public as parks, and known by the names of Pavilion Park, Waban Square, Prospect Park, the Hitching Ground, Waban Grove, Bay View Grove, and the Camp Ground; had erected and put a fence across Waban Avenue, thereby obstructing public travel; had enclosed by fences parts of each of the parks known as Union Square, Pavilion Park, Waban Square and Prospect Park, and thereby excluded the public therefrom, and had obstructed the paths there dedicated to the public; had erected and permitted to be erected buildings, booths and stands along the shore front near Bay View Grove; had erected and permitted to be erected houses and buildings along the shore front just outside of West Boulevard, and at the foot of Third Street and near the wharf; had erected and permitted to be erected along the shore fronts in numerous places bath houses for private use, and had let the same for hire.

The prayers of the bill were that due inquiry might be had, and

the right of the public ascertained and declared, and that the defendant might be enjoined from selling, conveying, leasing or otherwise disposing of any part of these parks, streets, avenues, paths and shore fronts, or any part thereof, so as to interfere with the public use of the same for each and every public use thereof which the public had; and that the defendant should be required and commanded forthwith to remove any and all fences, buildings and other structures from the parks, streets, avenues, paths and shore fronts, or any part thereof; and for further relief.

The defendant demurred to the bill and also filed an answer. Later the case was referred to Warren A. Reed, Esquire, as master, "to find the facts and report the same" to the court with such parts of the evidence as either party might request. It does not appear that any objection to the order of reference was made by the defendant. Hearings were had before the master, who on January 18, 1905, filed his report.

On January 20, 1905, the defendant filed exceptions to the master's report, among which the exceptions founded on the following objections related to the admission of evidence and were the only ones argued before this court:

1. For that the master admitted evidence of representations made by persons who had been officers of the defendant which was inadmissible and incompetent.

2. For that the master admitted the evidence of certain witnesses who testified to representations made to them by officers of the defendant corporation which was inadmissible and incompetent.

3. For that the master admitted the evidence of John L. Willis, of Quincy A. Bird, and of L. E. Bullock, who testified to representations made to them by B. H. Bourne, which was inadmissible and incompetent.

4. For that the master admitted evidence of certain representations made by Benjamin F. Gibbs and B. H. Bourne, as agents of the defendant corporation authorized to make representations binding it, to the dedication of its land, when said Gibbs and Bourne were not agents, but only servants, of the corporation, and that said representations were admitted in evidence as tending to prove a dedication of land by the association without proof that said Gibbs and Bourne had any au-

thority, by vote of the association or its directors, to bind the association relative to the dedication of its land.

5. For that the master admitted evidence of representations of the officers and alleged agents of the association, as tending to prove a dedication of its land, without offering evidence to prove that before said representations were made the association had formed an intention to dedicate its land.

6. For that the master admitted evidence of representations made by officers and alleged agents, as competent to prove a dedication of land, without requiring the relators to show, and without the relators contending that they had any evidence tending to show, that there had been any corporate act of the association itself, or any vote by its board of directors, to dedicate the land to public uses.

On April 18, 1908, the case came on to be heard before *Hammond, J.*, and by the consent of the parties was reserved for determination by this court upon the pleadings, the master's report, and the exceptions thereto.

On March 18, 1915, the case was submitted on briefs.

*F. Joy & R. Clapp*, for the defendant.

*N. Washburn*, for the relators.

BRALEY, J. The reference to the master having operated as a waiver of the demurrer, the questions for decision are whether any of the defendant's exceptions to the report are well taken and whether, upon the facts reported, the information can be maintained. *Driscoll* v. *Smith*, 184 Mass. 221.

The master was appointed to find the facts, and as the counsel for the defendant has argued only the exceptions relating to the admission of evidence, the remaining exceptions to alleged erroneous rulings of law are to be treated as waived. But, as the admissibility of the evidence is so interwoven with the principal question of dedication a separate discussion is unnecessary. The events as narrated by the master, preceding and subsequent to the incorporation of the association which acquired title to the tract described in the information, leave no doubt of the purpose of the incorporators, not only to provide a place for holding camp, grove and other meetings of a social and religious character, but to create and establish a popular summer resort. St. of 1877, c. 98, § 1. *Nye* v. *Whittemore*, 193 Mass. 208.

The location on Onset Bay and East River, with the natural surroundings of woodland, combined with the scheme adopted by the defendant to dispose of the land to purchasers, have resulted in large sales of lots and the erection by the owners of houses, hotels and buildings for commercial purposes, until from small beginnings the entire territory for transient as well as permanent residence has all the characteristics of a populous village.

It is also clear from the report that the present litigation would not have arisen if the association had not asserted the right to sell or lease portions of the parks, groves, squares, avenues, boulevards and shore fronts, delineated on the plan of the entire property which it caused to be prepared and filed in the registry of deeds. The streets or avenues, some of which have become public ways, could not be closed or materially encroached upon by the common grantor, as the purchasers of the lots have the right to their free and unobstructed use for ingress and egress as shown by the plan when they acquired title. *Downey* v. *Hood & Sons,* 203 Mass. 4. *Flagg* v. *Phillips,* 201 Mass. 216. *Drew* v. *Wiswall,* 183 Mass. 554, 555. *Fox* v. *Union Sugar Refinery,* 109 Mass. 292. *Farnsworth* v. *Taylor,* 9 Gray, 162.

No burden, however, is imposed on the public until the avenues and boulevards are laid out and established as required by statute, or unless they have become highways by prescription. R. L. c. 48, § 98. *Bassett* v. *Harwich,* 180 Mass. 585. *Bigelow Carpet Co.* v. *Wiggin,* 209 Mass. 542, 549. *Bartlett* v. *Bangor,* 67 Maine, 460.

If the parks, squares, groves and shore fronts are built over, it is obvious that contiguous estates will be greatly impaired in value and the community itself will suffer from the taking away of conditions of light, air, prospect and recreation, essential to its attractiveness as a shore resort as well as to its future residential growth.

The entrance of the public upon them and the enjoyment of the privileges understood to have been offered fully appears in the report. Indeed, an uninterrupted general public use had continued for more than twenty years previous to the information. *Abbott* v. *Cottage City,* 143 Mass. 521, 525. *Cincinnati* v. *White,* 6 Pet. 431. *The Queen* v. *Chorley,* 12 Ad. & El. (N. S.) 515.

But, if ample evidence of acceptance appears, the inquiry re-

mains whether the association had dedicated the use of these lands to the public. No formalities were necessary. It is settled at common law that the dedication need not be in writing. *Alden Coal Co.* v. *Challis*, 200 Ill. 222. Its validity depends upon the intent and consent of the owner, who of course retains the fee. *Wright* v. *Tukey*, 3 Cush. 290. *Hayden* v. *Stone*, 112 Mass. 346. *Attorney General* v. *Abbott*, 154 Mass. 323. It may spring from oral declarations or statements by the dedicator, or by those authorized to act in his behalf, made to persons with whom he deals and who rely upon them; or it may consist of declarations addressed directly to the public. *Pierce* v. *Roberts*, 57 Conn. 31. *State* v. *Atherton*, 16 N. H. 203. It also may be manifested by the owner's acts from which such an intention can be inferred. *Wright* v. *Tukey*, 3 Cush. 290. *Smith* v. *Flora*, 64 Ill. 93.

The plan, in accordance with which house lots were put upon the market and sold, shows as we have said the avenues and boulevards, the parks, squares, groves and an unobstructed frontage on the water. And the master finds that the association issued for several years circulars in large numbers, stating that heliotype copies of the plan could be had on application to its president or secretary, while the directors annually appointed an agent of the association and a committee "to attend to the sale of lots and to have general oversight of the local interests and public property of the association during the ensuing season."

This committee bargained with prospective customers for the sale of lots and, sales having been made, the association executed the deeds. The evidence that in effecting sales one Gibbs, a member of this committee and who also acted at various times as agent, director and treasurer, called the attention of purchasers to the groves and open spaces appearing on the plan and informed them that they had a right to use the ways and the "shore reserves," as well as evidence of similar statements made on several occasions by the directors, including the president and the other agents entrusted with the sale of lots, was clearly admissible.

The defendant, as appears in the annual reports of the treasurer, having received the proceeds of the sales, with knowledge on the part of its officers of the conditions under which purchasers were induced to buy, is bound by the representations made

for its benefit.   *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177, 180, 182.   *Beacon Trust Co.* v. *Souther,* 183 Mass. 413, 416, 417.

If, when sales were negotiated, the defendant's officers and agents had stated or even intimated that the right to divide the open spaces into building lots after the resort should be established was reserved, there can be no doubt sales would have fallen off and very likely the whole enterprise would have been in jeopardy.   As was said in *Attorney General* v. *Abbott,* 154 Mass. 323, 326, "If the corporation had an intention to reserve this right, the course pursued of inviting purchasers was inconsistent with common honesty."

But evidence of the intention of the defendant is not confined to the plan, the sale of lots, or the circumstances under which they were sold.   The annual report for several years, which was accepted by vote of the association, contained these statements: "Parks and Groves.   Waban Grove, 5 acres; Bay View Grove, 2 acres; Pavilion Park, 1½ acres; Prospect Park, 3 acres; Shell Point Grove, 2½ acres; Longwood Park, 1 acre; Wabasso Park, 1 acre; Camp Ground, 6 acres; Shore Land, 25 acres, more or less. . . . The value of pleasant parks and beautiful groves to complete the desired effect of our beautiful summer resort, both as a sanitary measure and an indispensable pleasure retreat, are too sacred to be estimated with figures, and they should never be encroached upon, except to be made more attractive with pleasant walks, shrubs and flowers."   "Our parks and groves, when viewed in the light of sanitation and pleasure, and beautifying of Onset as a summer home and spiritual resort, are priceless, and cannot be too carefully protected and guarded from encroachment of every nature. . . . Our parks and groves have no real cash value, as they are indispensable shore retreats and should never be encroached upon, only to beautify and adorn. . . . Our parks and groves have no relative cash value, as they are an indispensable pleasure retreat, and are looked upon as such by the town assessors and are not taxed."   And the report states that "the parks, groves and shore fronts were not assessed or taxed after the year 1881, and by vote of the directors were not included in the assets of the association."   The parks also were designated by signs bearing their respective names, and

seats therein were provided for the public, as well as at the shore front.

The record contains nothing to indicate that these positive statements have ever been modified or withdrawn and the lot owners and the general public are found to have known of these assurances and to have acted upon them.

It is unnecessary to enlarge further upon the report, as enough appears from the principal findings, to which sufficient reference has been made, to warrant the finding of a continuing purpose to dedicate, even if no formal vote to that effect was ever passed by the association. *Hobbs* v. *Lowell*, 19 Pick. 405, 409. *Noyes* v. *Ward*, 19 Conn. 250, 266. *Price* v. *Plainfield*, 11 Vroom, 608. *Wyman* v. *New York*, 11 Wend. 486. *Bartlett* v. *Bangor*, 67 Maine, 460. *Richardson* v. *Davis*, 91 Md. 390, 396. *Flershheim* v. *Baltimore*, 85 Md. 489. *Leggett* v. *Detroit*, 137 Mich. 247, 254. *Cincinnati* v. *White*, 6 Pet. 431. Dillon Mun. Corp. (5th ed.) § 1079 and cases cited in note 2.

The intention to dedicate being plain, and the material facts to which we have adverted being ample to constitute dedication, the scope of the decree is to be determined.

While it is probable that during the sixteen years elapsing since the proceedings were begun and the presentation of the case to the full court many and important changes have occurred, and the environment may have been more or less transformed, the rights of the parties must be ascertained and adjusted on the record before us. We assume that the present Attorney General still prosecutes and controls the suit and that the brief of counsel for the relators is submitted with his sanction. *Parker* v. *May*, 5 Cush. 336. *Attorney General* v. *Parker*, 126 Mass. 216, 221.

It not having been contended that the "Camp Ground," "Union Square" and "Pavilion Park," where the office and other buildings are and which have been occupied and used by the association for business and other purposes, should be considered as within the dedication, a decree with costs is to be entered overruling the exceptions and confirming the report and with the exception of the "Camp, Ground," "Union Square" and "Pavilion Park" restraining and enjoining the association from obstructing, selling, conveying, leasing or otherwise disposing of

any part of the parks, squares, groves, shore fronts and beaches, as shown on the plan, so as to interfere with the public use and easement.

*Ordered accordingly.*