## STATE v. SWANSON THEATER CIRCUIT.

No. 3728.  Decided November 30, 1921.  (202 Pac. 544.)

HEALTH—THEATER HELD "PUBLIC BUILDING" WITHIN STATUTES AUTHORIZING STATE BOARD OF HEALTH TO PROMULGATE RULES AS TO SANITATION. In view of Comp. Laws 1917, § 7892, as to interpretation of penal statutes, a theater is a "public building" within the purview of sections 2714-2717, authorizing the state board of health to promulgate rules for the sanitation of public buildings, and penalizing violations of such rules, the term "public buildings" being intended by the act to include all buildings where the public congregate in considerable numbers either for amusement or for other purposes, all buildings to which the people generally have access, and which are intended to accommodate the general public for amusement purposes, although used for private gain.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight*, Judge.

Proceeding by the state of Utah against the Swanson Theater Circuit. From a judgment sustaining demurrer to and dismissing the complaint, the State appeals.

REVERSED.

*Harvey H. Cluff*, Atty. Gen., and *W. Hal. Farr*, Asst. Atty. Gen., for the State.

*Allen T. Sanford*, of Salt Lake City, for respondent.

FRICK, J.

This is an appeal by the state of Utah from a judgment sustaining a general demurrer interposed by the defendant to the complaint and dismissing the complaint.

In the complaint, after stating dates and the necessary facts respecting ownership and other matters of inducement, it is charged that the defendant "did willfully and knowing-

ly operate and maintain a public theater," etc.; that said theater did not have "its toilet rooms provided with an independent source of ventilation sufficient to change the air in said toilet rooms at least 6 times per hour, as is provided under the rules and regulations promulgated and adopted by the State Board of Health  *  *  *  under and pursuant to *  *  *  Laws of Utah 1917." The rules and regulations referred to are set forth in the complaint. The facts respecting the giving of notice to the defendant of the defects in said ventilation and its failure to comply with said notice are also fully stated in the complaint.

A demurrer was interposed to the complaint, "for the reason and upon the ground that said complaint does not state facts sufficient to constitute a public offense."

In view that it is contended that the defendant's theater is not a public building within the purview of the statute, and hence not included therein, we here insert the statute in full as found in Comp. Laws Utah 1917, §§ 2714, 2715, 2716, and 2717.

"2714. It shall be the duty of the State Board of Health, and it is hereby authorized and empowered, to prepare rules and regulations governing the proper disinfection and sanitation of public buildings and all railway coaches and sleeping cars operated in the state of Utah.

"2715. It shall be the duty of the State Board of Health, and it is hereby authorized and empowered, to prescribe a Sanitary Code, which shall contain and provide rules and regulations of a general nature for the improvement and amelioration of the hygienic and sanitary condition of said public buildings, railway coaches, and sleeping cars.

"2716. Every person having control of any public building, railway company, sleeping car company, or other corporation, company, or individual, or the receiver thereof, engaged in carrying passengers in this state, shall, at their own expense, within a prescribed time after receiving notice from the state board of health of the promulgation of the rules and regulations in the above sections mentioned, carry the same into effect.

"2717. If any person having control of any public building, or any agent, manager, operator, employé, or receiver of any railway company, sleeping car company, or any individual shall fail to comply with the provisions of this chapter, and the rules and regulations promulgated by the State Board of Health under the pro-

visions thereof, he shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than $50 nor more than $200."

The only question raised and argued on this appeal is whether defendant's theater is a "public building" within the purview of the foregoing sections.

Our Penal Code (Comp. Laws Utah 1917, § 7892) provides:

"The rule of the common law that penal statutes are to be strictly construed has no application to the revised statutes. The provisions of the revised statutes are to be construed according to the fair import of their terms, with a view to effect the objects of the statutes and to promote justice."

With that provision as our guide, did the Legislature intend to include a theater by using the term "public building" in the statute in question?

Counsel for defendant, with much vigor, insists that the term "public buildings" must be limited to such buildings as are owned by the public and are devoted to public use, and that the term does not apply to buildings that are privately owned and used or operated for private gain. In support of his contention he cites 23 A. & E. Ency. L. (2d Ed.) 310; *Kittaning Academy* v. *Brown,* 41 Pa. 270; *McIntyre* v. *Board of Commissioners,* 15 Colo. App. 78, 61 Pac. 237; *Cullum* v. *State,* 109 Ga. 531, 35 S. E. 125; 31 Cyc. 752. In the foregoing cases the term "public building" was limited to buildings which were owned by the state, by counties, by cities, and by similar public corporations, and, in view of the objects and purposes of the acts in which the term "public building" was used, the decisions are clearly right. A mere cursory reading of the decisions and the acts therein construed makes it clear that the legislative intent was to limit the public buildings there in question to such as were owned by the public corporations, and were used for the purposes last above stated. It is equally clear, we think, that, in view of the language used and the objects and purposes of the act here in question, the Legislature did not intend to so limit the term "public building." The courts, in construing and applying a particular act, must constantly keep in mind the objects and purposes of such act, as well as the leg-

islative intent as the same is made to appear from a consideration of all that is said, and not alone from what may be said in one part or section of the act. In order to accomplish that purpose, and to fully meet the legislative intent, it often becomes necessary to give a wider or narrower meaning to a particular phrase or term used in the act. It may therefore, in a particular act, become necessary either to restrict or to expand the meaning of the term public buildings so as to make effective the legislative intent.

In *Nye* v. *Whittemore*, 193 Mass. 208, 79 N. E. 253, it was held that the term ''public buildings'' included a building used for camp meeting purposes. In the course of the opinion, in discussing what meaning should be given to the term ''public buildings,'' it is said:

"The term 'public buildings' in the act is unaccompanied by words of explanation or limitation. Whether or not, then, it is used in such a sense as to include camp meeting buildings depends upon the general scheme or object of the act."

The court then proceeds to examine into the objects and purposes of the act, and arrives at the conclusion that buildings used for camp meeting purposes are public buildings.

In *Bradford Infirmary* v. *Bradford*, 7 Ex. Rep. (Eng.) 768, it is held that an infirmary, although privately owned, is nevertheless a public building within the purview of the act there in question. To the same effect is *Guardians Bedford Union* v. *Bedford Imp. Comr's*, 14 Eng. Law & Eq. 424.

In *Austin* v. *Soule*, 36 Vt. 645, the question was what was intended by the term ''public place'' within the purview of an act requiring certain sales to be made at a public place. The court, in the course of the opinion, says:

"It is quite obvious that the term 'public place' as used in the statute is to be interpreted in a relative rather than in an absolute sense, and must be defined by reference to the circumstances and the subject-matter of each particular case. We call that 'public' which is open for general or common use or entertainment, as a public highway or road, a public house; and yet the term is more comprehensive than this definition."

It will thus be seen that courts do not and cannot adhere to a hard and fast rule with respect to what may be included

within the term "public buildings" where the term is used in a particular act.

Quite apart from what is said in the foregoing decisions, however, we think that a careful reading of the act here in question will disclose that the term "public building" was intended to include all buildings where the public congregate in considerable numbers either for amusement or for other purposes. If we keep in view that the whole object and purpose of the act is to protect, safeguard, and promote the public health, no other conclusion seems reasonable. Modern theaters, we all know, are places where both young and old congregate in large numbers both by day and by night. They may therefore well be deemed subject to regulation by our boards of health. That is especially true with regard to the proper ventilation of such buildings or places. We must assume that the Legislature knew what all others know, that proper ventilation of all buildings where people congregate in any considerable numbers for any considerable length of time is absolutely necessary, and that there is no class of buildings where people congregate which require greater and more constant care and inspection than do buildings used as theaters. While it is a matter in which the public is concerned that the buildings that are owned by the state, by the several counties and by the cities and towns are properly ventilated and are maintained in a hygienic and sanitary condition, yet it is of far greater concern to the public, and especially to the growing generation, that the numerous buildings that are being used as theaters both day and night, and in which thousands congregate for amusement, be constantly ventilated and maintained in a hygienic and sanitary condition. No doubt the Legislature had this condition in mind when it adopted the act in question.

That it was intended to include all buildings to which the people generally have access, and which are intended to accommodate the general public for amusement purposes, although used for private gain, seems too clear for serious controversy. In the very first section of the act it is made clear enough that all buildings used for public gatherings, and

where the public congregates, were intended to be included. The same is true of the next section. In the third section, however, it is made doubly clear that the public buildings mentioned in the act were not intended to be limited to those that are owned by the state, by the counties, by the cities, and towns. In that section it is expressly provided that every person having control of any public building, etc., "shall, at their own expense, within a prescribed time after receiving notice from the state board of health of the promulgation of the rules and regulations in the above sections mentioned, carry the same into effect." Is it reasonable to assume that the person, officer, or committee who may be in control of state, county or city buildings shall, at his or its own expense, put the building or maintain it in a "hygienic and sanitary condition?" Again, is it reasonable to assume that it was intended to make the state guilty of a misdemeanor and subject it to the payment of a fine in case of failure to comply with the rules of the Board of Health? While no doubt it is perfectly proper that the Board of Health be empowered to promulgate rules governing the hygienic and sanitary condition of all public buildings, yet if such rules were to be limited to such buildings only as are owned and used by the state, counties, cities, and towns, the requirement that those in control of such buildings should comply with those rules at their own expense, and the imposition of fines and penalties upon the state, counties, cities, and towns, is manifestly out of place.

Indeed, if the purposes of the act are kept in mind it is not easy to understand why any owner or operator of a theater building can consistently contend that theater buildings should be excluded when railway coaches and sleeping cars are included. If the health of those who attend theaters is to be protected, then it is imperative that the buildings in which theaters are maintained shall be properly ventilated at all times, and it seems almost incredible that theater owners should object to a regulation which is so essential to the public health.

Counsel for defendant, however, argues that, if theaters are

included, all the stores and business places must also be included, since the public generally also goes to all those places. It is not now necessary to determine just what places may be included within the meaning of the term "public building" as that term is used in the act. For the purposes of this decision it is sufficient if it be determined that the buildings used as theaters and owned by the defendant or controlled by it come within the meaning of that term.

In view that in our judgment all buildings used as theaters clearly come within the meaning of the term "public buildings" as that term is used in the act, it is unnecessary to pursue the subject further. It is therefore ordered that the judgment of the district court sustaining the demurrer to the complaint and dismissing the same be, and the same is hereby, reversed.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.